**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

COMMUNITY BANK & TRUST –
WEST GEORGIA,

      Plaintiff,

      v.                              Civ. No. 26-136 SCY/JMR

STEPHEN M. JEFFERIES,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PRELIMINARY INJUNCTION AND REQUEST FOR STAY**

After Plaintiff Community Bank and Trust-West Georgia ("Bank") terminated the

employment of Defendant Stephen Jefferies ("Jefferies"), Jefferies invoked the arbitration clause

of his employment contract, thereby initiating arbitration proceedings in Georgia. In those

proceedings, Jefferies has argued that contracts he entered into in New Mexico merged with his

Georgia employment contract and so should be part of the Georgia arbitration. The Bank

disagrees, arguing that a forum-selection clause in the New Mexico contracts requires that issues

concerning the New Mexico contracts be litigated in New Mexico, under New Mexico law.

Consequently, the Bank seeks to enjoin the Georgia arbitrator from addressing issues involving

the New Mexico contracts. Jefferies opposes the Bank's motion for an injunction and, in a cross-

motion, asks this Court to stay the present proceedings. The Court denies the Bank's motion for

an injunction and Jefferies' motion for a stay.

**BACKGROUND**

The first New Mexico contract at issue is entitled "Split Dollar Agreement". Doc. 13 at

47-66. Jefferies entered into this contract on May 31, 2018, with his employer at the time—a

New Mexico Bank named U.S. Eagle. *Id.* at 31. The contract establishes a life insurance policy

for which U.S. Eagle agreed to make the premium payments. *Id.* The Split Dollar Agreement stipulates that the payments are a loan from U.S. Eagle to Jefferies and are subject to the terms of the Split Dollar Agreement "as well as those contained in the separate Promissory Note." *Id.* at 48. The Split Dollar Agreement provides that, if Jefferies' employment is terminated "for cause," as defined in Exhibit B to the agreement, the agreement will also terminate. In such circumstances, the agreement requires Jefferies to repay amounts owed according to an attached "Termination Benefits Grid". *Id.* at 54-55, 63-66. A forum selection clause in the Split Dollar Agreement provides that disputes regarding the agreement must be settled by binding arbitration in New Mexico and in accordance with ERISA. *Id.* at 60.

The second New Mexico contract at issue, the Promissory Note referenced in the Split Dollar Agreement, is dated the same day, May 31, 2018. *Id.* at 67. Similar to the Split Dollar Agreement, the Promissory Note provides that termination of employment "for cause" constitutes default on the Promissory Note. *Id.* at 68. It further requires that such default must be remedied within 20 days after written notice of the default and that legal suit "be instituted only in a State or Federal Court located in New Mexico." *Id.* at 68-69. Although Jefferies and U.S. Eagle amended the Promissory Note on June 1, 2020, to change the interest rate and death benefit terms, they did not amend the forum-selection clause. Doc. 1-2 at 3-4.

On March 16, 2022, Jefferies left U.S. Eagle for employment with the Bank. Doc. 7-1 at 1. Jefferies and the Bank then executed a third contract at issue, the Employment Agreement, which they signed on April 14, 2023, but made effective as of March 16, 2022. *Id.* As part of this Employment Agreement, the Bank agreed to buy out the life insurance contract U.S. Eagle owned by virtue of the Split Dollar Agreement and Promissory Note. *Id.* at 3. The Bank acquired the Promissory Note on May 31, 2022, with U.S. Eagle assigning the contract to the Bank. Doc.

7 at 3. The parties agree that the Bank thus became the "payee" under the Split Dollar Agreement and Promissory Note. *Id.*; Doc. 13 at 6. Unlike the Split Dollar Agreement and Promissory Note, which require resolution of disputes in New Mexico, the Employment Agreement contains a forum-selection clause stating, "any and all disputes . . . which relate in any manner whatsoever to this Agreement . . . shall be submitted to arbitration in . . . Georgia." Doc. 7-1 at 9. Importantly, the Employment Agreement also contains a merger clause which provides: "This Agreement . . . constitutes the entire agreement of the Parties pertaining to its subject matter and supersedes all prior or contemporaneous agreements or understandings between the Parties pertaining to the subject matter of this Agreement . . . ." *Id.* at 7.

The Bank terminated Jefferies' employment, allegedly "for cause", on April 17, 2025. Disagreeing that cause existed to terminate him, Jefferies, filed a claim with a Georgia arbitrator on May 19, 2025. Doc. 8-2 at 6. Several months later, on December 22, 2025, the Bank sent Jefferies a written demand for amounts due under the Promissory Note, asserting he was in default due to his "for cause" termination. *Id.* This caused Jefferies to, on January 21, 2026, file a motion with the Georgia arbitrator seeking to add another claim: a declaration that he was not terminated for cause as defined in the Split Dollar Agreement. Doc. 8-2 at 1-13. The Employment Agreement and Split Dollar Agreement contain similar, but slightly different, definitions of "for cause" termination. Doc. 7-1 at 4-5; Doc. 13 at 65.

Two days after Jefferies filed his motion in Georgia seeking to add disputes regarding the Split Dollar Agreement and Promissory Note to the Georgia arbitration, the Bank filed the present lawsuit in New Mexico federal court. Doc. 1. The complaint contains a single count for breach of the Promissory Note. *Id.*

Thereafter, on February 20, 2026, the Georgia arbitrator asked the parties to provide

3

additional briefing on whether enforcement of the Promissory Note was within the scope of the Employment Agreement. Doc. 7 at 7. One week later, the Bank filed the instant motion for a preliminary injunction, requesting that this Court "enjoin the pending Georgia-based arbitration, AAA Arbitration No. 01-25-00002-3961." Doc. 7 at 1.

On March 3, the arbitrator issued a decision granting Jefferies' motion to change his claim to include the dispute over the "for cause" provision in the Split Dollar Agreement. Doc. 13 at 23-46. The arbitrator concluded she had authority to decide this dispute, subject to de novo review by a New Mexico court. Doc. 13 at 38. Given this, Jefferies filed a cross-motion seeking to stay the present action pending arbitration. *Id.* at 1. A final arbitration hearing is scheduled for May 11, 2026. Doc. 13 at 1.

## **LEGAL STANDARD**

For the Bank to obtain a preliminary injunction, it must "establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first two factors are "the most critical" for a party seeking an injunction. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Turning to Jefferies' motion for a stay, the Court must balance a party's interest in a stay against the harm of a stay. *Clinton v. Jones*, 520 U.S. 681, 706-08 (1997). Whether to issue a stay of court proceedings lies within the district court's discretion. *Id*. at 706; *Baca v. Berry*, 806 F.3d 1262, 1269 (10th Cir. 2015) ("the district court has the power to stay proceedings before it and to control its docket for the purpose of economy of time and effort for itself, for counsel, and for litigants").

**DISCUSSION**

A.      Preliminary Injunction

The Bank requests two different injunctions: (1) in its motion it seeks a full injunction of the Georgia arbitration; and (2) in its reply it narrows its injunction request to a determination of arbitrability on the Promissory Note. The Court denies both requests. The first request seeks to enjoin proceedings the parties agree are properly before the Georgia arbitrator and so is overbroad. The Court denies the second request because Jefferies did not have a chance to respond to the relief requested and because the Bank fails to show irreparable harm.

In its opening motion the Bank requests that the Court enjoin the Georgia arbitration entirely:

> Plaintiff Community Bank & Trust – West Georgia ("the Bank") hereby requests, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), that the Court enjoin the pending Georgia-based arbitration, AAA Arbitration No. 01-25-00002-3961 . . . .

Doc. 7 at 1. This request is repeated on the last page of the motion:

> [T]he Bank respectfully requests that the Court enjoin the Georgia-based arbitration, AAA Arbitration No. 01-25-00002-3961 . . . .

*Id.* at 13. As Jefferies argues in his response, this request is overbroad. Doc. 13 at 19. The Bank does not dispute that the Georgia arbitrator is properly deciding, at the very least, whether the Bank terminated Jefferies "for cause" as defined in the Employment Agreement. This Court has no grounds on which it could enjoin the Georgia arbitrator from deciding this aspect of the parties' dispute. The Court, therefore, cannot grant the full injunction the Bank requests in its opening motion.

In reply, the Bank attempts to narrow the scope of the injunction it seeks as follows:

> The Bank requests only that this Court: (1) determine whether it or the Georgia arbitrator has the authority to determine if the Promissory Note is subject exclusively to litigation in New Mexico or to arbitration in Georgia; and (2) while

5

it makes that determination, enjoin the Georgia arbitrator from attempting to assert jurisdiction over that determination.

Doc. 21 at 9. However, by narrowing its request in its reply, the Bank introduced different considerations that Jefferies could not have anticipated or addressed in his response. That is, Jefferies tailored his response brief to the relief the Bank requested in its motion. In response to the Bank's motion, Jefferies pointed out that the Bank moves to enjoin the entire arbitration. Based on the relief the Bank sought, Jefferies made arguments related to how halting the entire Georgia arbitration would cause him irreparable harm and would be contrary to the interests of the public in a speedy resolution of the disputes before the arbitrator. Doc. 13 at 19-20. The Bank's revised request in its reply that the Court halt only part of the Georgia arbitration involves different considerations. Because Jefferies did not have the opportunity to address these considerations, the Court declines to grant this request.

For example, because the Bank asked for a more limited injunction in the reply, the parties did not have an opportunity to brief the impact the partial injunction would have on the Georgia arbitration. At issue in the Georgia arbitration is whether, under the Employment Agreement, the Bank terminated Jefferies for cause. Jefferies does not dispute that a similar for-cause question is central to the Bank's assertion that Jefferies breached the Promissory Note. Jefferies argues, however, that the parties agreed to have the Georgia arbitrator, not this Court, decide this for-cause question that arises from the Promissory Note. Disagreeing, and to prevent the Georgia arbitrator from deciding whether Jefferies breached the Promissory Note, the Bank filed the present motion for a preliminary injunction. In reply, the Bank narrowed the scope of the injunction it requested.

Although the partial injunction the Bank seeks in its reply does not threaten the same overreach as the injunction the Bank sought in its motion, the partial injunction has a different

6

downside. If the Court were to ultimately agree with Jefferies and hold that the Georgia arbitrator should decide whether Jefferies breached the Promissory Note, the Georgia arbitrator would not be able to simultaneously resolve all issues that might come before it. Even though the Promissory Note and Employment Agreement do not have the same definition of "for cause", evidence of whether the Bank terminated Jefferies for cause under the Promissory Note will overlap with evidence of whether the Bank terminated Jefferies for cause under the Employment Agreement. It would be inefficient and more costly for the parties and the Georgia arbitrator to have to litigate these for-cause issues separately than to litigate them simultaneously. Although such an argument would have had some relevance to the Court's consideration of the relief the Bank seeks in its reply, the Court does not now decide how much of an impact arguments not briefed would have had on its analysis of the relief the Bank seeks in its reply. Instead, the Court points out that, because the Bank did not seek a partial injunction until reply, Jefferies had no opportunity to raise arguments such as this that are specific to a motion for partial injunction. The Court is not inclined to grant relief requested in a reply brief without first providing the opposing party an opportunity to address the relief requested.

Further, the Bank has not demonstrated that it will suffer irreparable harm in the absence of the narrowed injunction requested in its reply brief. The Bank asserts two irreparable harms. First, it argues that denial of its injunction request would force it into arbitration and thereby violate its right to a civil trial. Doc. 7 at 9-11. Denying the Bank's motion for a preliminary injunction, however, does not foreclose the possibility of a jury trial. Although the arbitrator concluded that she had jurisdiction to decide whether disputes regarding the Split Dollar Agreement and/or Promissory Note were subject to arbitration in Georgia, the arbitrator also concluded that her decision was subject to de novo review by the Court. Doc. 13 at 38. The

7

Court agrees that the arbitrator's decision regarding arbitrability has no binding effect on this Court—the Court will decide this issue for itself. Because denial of the Bank's injunction request does not prevent the Court from considering its entitlement-to-a-jury-trial argument, such denial will not cause the irreparable harm the Bank claim it will cause.

Second, the Bank argues that the failure to enforce a valid forum selection clause constitutes irreparable harm. *Id*. True, the Bank might suffer some harm by having to litigate issues related to the Split Dollar Agreement and/or Promissory Note twice. The Bank correctly observes that denying its injunction request will not prevent the Georgia arbitrator from considering issues related to the Split Dollar Agreement and/or Promissory Note as well as similar issues related to the Employment Agreement. But such harm would not be irreparable. The Bank must already litigate before the Georgia arbitrator issues related to the Employment Agreement, including whether it terminated Jefferies for cause under the Employment Agreement. The additional cost of having to litigate issues related to the Split Dollar Agreement and/or Promissory Note in front of an arbitrator prior to obtaining a de novo determination in this Court is not an irreparable harm. If the enlarged arbitration were found to be unwarranted, such harm could be remedied by shifting fees. *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) ("Regarding irreparable harm, the movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." (internal quotation marks omitted)).

In sum, the Court finds that the Bank's initial request to enjoin the Georgia arbitration is too broad. It further finds that the Bank' belated attempt to seek a more limited, partial injunction denies Jefferies an opportunity to respond and that the Bank's alleged injuries related to the partial injunction, including potential litigation costs and delayed exercise of jury rights, do not

8

constitute the type of irreparable harm required to justify the extraordinary remedy of injunction. Accordingly, the Court denies the Bank's request for preliminary injunction.

  B.  <u>Stay of Proceedings</u>

  The Court also denies Jefferies' request for a stay (raised as a cross-motion in his response brief). Doc. 13 at 20. Jefferies argues that when a dispute is subject to arbitration, a stay of any filed court proceedings is appropriate until the arbitration has been conducted. *Id.* But Jefferies has not shown that the dispute before this Court is necessarily subject to arbitration. The Supreme Court has held that when there are competing contracts, the issue of whether a party agreed to arbitration is a decision for a court, not the arbitrator. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). This issue—which forum-selection clause controls—is properly before this Court on the Bank's complaint for breach of the Promissory Note.

  Jefferies argues that arbitrability is a matter for the arbitrator when it is "clear and unmistakable" that the parties agreed as much. Doc. 13 at 16; *see Coinbase*, 602 U.S. at 149 ("[W]e have explained that courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (cleaned up)). Jefferies argues the "clear and unmistakable" standard is met in this case because the Employment Agreement—the third, and last-in-time contract at issue—contains a merger clause that supersedes conflicting provisions of any prior agreement between the parties relating to the same subject matter. Doc. 13 at 12. The Georgia arbitrator agreed with this argument. Doc. 13 at 37.

  The Court does not find the arbitrator's decision to be unreasonable. However, neither does the Court find unreasonable the Bank's arguments as to why the New Mexico forum selection clauses should remain in effect. In other words, "clear and unmistakable" evidence does not exist that the parties agreed to arbitrate arbitrability.

9

More specifically, the arbitrator correctly pointed out that the benefits bestowed on Jefferies through the Split Dollar Agreement and Promissory Note were an important part of Jefferies' employment-compensation package with the Bank. Doc. 13 at 32-33. Further, as the arbitrator points out, as part of the Employment Agreement, the parties agreed that "with respect to any and all disputes arising pursuant to any of the terms of this Agreement or which relate in any manner whatsoever to this Agreement . . . shall be submitted to arbitration in XXX Georgia . . . ." Doc. 13 at 27. The arbitrator also noted that, as part of the Employment Agreement, the parties agreed to waive any right to trial by jury "in connection with any matter whatsoever arising out of or in any way connected with this Agreement." Doc. 13 at 28. The question is whether this forum selection language in the Employment Agreement supersedes the forum selection language found in the Split Dollar Agreement and Promissory Note.[1] An argument that the present dispute regarding Jefferies' life insurance package, which is an important part of his Employment Agreement, should proceed according to the terms of the Employment Agreement is not without some force.

A question exists, however, as to what types of disputes "arise" from the Employment Agreement. When a dispute relates to terms within the Employment Agreement, the Court agrees that those disputes arise from Employment Agreement and so are clearly and unmistakably subject to Georgia arbitration, as provided in the Employment Agreement's forum selection clause. For instance, the Employment Agreement clearly required the Bank to acquire the

---

[11] As the arbitrator further pointed out, the Split Dollar Agreement calls for arbitration in New Mexico while the Promissory Note calls for litigation "only in a State or Federal Court located in New Mexico". Doc. 13 at 29-31. Because the current dispute regards whether arbitration should proceed in Georgia and the Split Dollar Agreement and Promissory Note both call for litigation to proceed in New Mexico, the Court need not presently address whether, if litigation were to proceed in New Mexico, such litigation would take the form of an arbitration or of a court-filed lawsuit.

Promissory Note. A dispute regarding whether the Bank fulfilled this term of the Employment Agreement would clearly and unmistakably be subject to arbitration in Georgia. That is because the dispute arises from a provision found in the Employment Agreement itself. Whether the Employment Agreement requires a Georgia arbitrator to decide disputes over terms not found in the Employment agreement, however, is less clear.

By analogy, assume an employment contract required a company to lease a car for its employee. A dispute as to whether the employer actually leased a car for the employee would be subject to terms of the employment agreement, including any forum-selection clause contained in the employment agreement. Further assume, however, that the employee entered into a separate agreement regarding the terms under which the car was leased. For instance, suppose the terms of the vehicle lease forbid the employee from driving the car leased in a reckless manner. If the employee wrecked the car and a dispute arose regarding whether the employee drove in a reckless manner, should the forum-selection provision in the lease agreement or the forum-selection agreement in the employment agreement control? In the present case, the Employment Agreement and Split Dollar Agreement contain similar, but not identical, definitions of "for cause." If the "for cause" definition contained in the Split Dollar Agreement governs disputes related to the Split Dollar Agreement and Promissory Note (a question not yet briefed) it is not clear and unmistakable that the "for cause" issues should be decided by a Georgia arbitrator, under Georgia law, rather than in New Mexico, under New Mexico law, as set forth in the Split Dollar Agreement and Promissory Note.

The Bank's argument that the forum-selection clause in the Promissory Note should govern disputes over terms in the Promissory Note is at least colorable. The Bank argues the Employment Agreement between Jefferies and the Bank, which involves the terms of Jefferies'

11

employment, is different than the Promissory Note, which concerns a life-insurance policy and provisions for funding its premiums. Doc. 7 at 8-9. When the Bank became a party to the Promissory note, the Bank asserts, it "assumed all rights and obligations contained in that Promissory Note." Doc. 21 at 3. As such, the Bank maintains that it enjoys the benefit of the forum-selection clause in the instrument to which it became a party. Doc. 7 at 12; Doc. 21 at 8-10. The Court cannot conclude that the Bank's position is clearly and unmistakably wrong.

That is, the existence of more than one reasonable interpretation of the merger clause in the Employment Agreement prevents the Court from finding, at this stage of the litigation, "clear and unmistakable" evidence that the parties agreed to resolve claims for breach of the Promissory Note by Georgia arbitration. Because Jefferies has not pointed to "clear and unmistakable" evidence, the question of arbitrability is for a court to decide.[2] So that resolution of this issue may proceed, the Court declines to issue a stay of its proceedings.

## CONCLUSION

The Court DENIES Plaintiff's Motion For Extraordinary Relief In The Form Of A Preliminary Injunction (Doc. 7) and DENIES Defendant's Expedited Cross Motion To Stay (Doc. 13).

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

---

[2] The arbitrator ruled because the parties brought the dispute before her prior to bringing it before a court, she has primary authority to decide the dispute subject to de novo review by a court (possibly either in Georgia or New Mexico) after her decision issues. Doc. 13 at 38-41. Jefferies does not request a stay on the basis of this "primary authority" doctrine, and neither party addresses it in their briefs. The Court declines to consider this issue sua sponte.